**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denice Garcia,<br><br>  Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>  Defendants. | No. CV-21-01152-PHX-MTL<br><br>**ORDER** |

**I.**

This case concerns the officer-involved shooting of James P. Garcia. According to the Second Amended Complaint, City of Phoenix Police Officers Wilson and Trevino, both defendants here, responded to an emergency call of a person with a knife. (Doc. 31 at ¶ 18.) The victim told them that he was stabbed in an alley. (*Id*.) The victim described his attacker and suggested a house where the officers might find him. (*Id*. ¶¶ 20-21.) The police officers travelled to the residence where they happened upon Mr. Garcia sitting inside a car parked in the driveway. (*Id*. ¶ 22.) The officers, now including Sgt. Backus and Officer Deida, also named as defendants, asked Mr. Garcia to exit his car. (*Id*. ¶ 26-32.) He refused. Sgt. Backus ordered the other officers to remove Mr. Garcia from his car, but the doors were locked. (*Id*. ¶ 33.) Officer Wilson noticed that Mr. Garcia had a handgun between the driver's seat and the center console. (*Id*. ¶ 36.) Officer Wilson drew his handgun, pointed it at Mr. Garcia, and began yelling commands. (*Id*. ¶ 38.) Seconds later, Officers Wilson and Trevino fired their weapons at Mr. Garcia, killing him. (*Id*. ¶ 40.) These well-pleaded

facts have been taken from the Second Amended Complaint.

The Court now considers Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. 33.) Plaintiff agrees that the first claim for relief, unlawful detention under the Fourth Amendment, should be dismissed. (Doc. 39 at 1.) Plaintiff further concedes that the non-shooting officers, Sgt. Backus and Officer Dieda, should be dismissed from the case. (Doc. 44.) The remaining points are contested.

**II.**

A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage, the Court's duty is to accept all well-pleaded complaint allegations as true. *Id.* "[D]ismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

**III.**

1. Shortly after the Defendants filed their Motion, the Arizona Superior Court ordered the appointment of Plaintiff Denise Garcia as the personal representative for the estate of James P. Garcia. (Doc. 39 at 2.) Accordingly, Defendants' objection to Denise Garcia for lack of standing is denied.

2. Defendants argue that the Second Amended Complaint should be dismissed because the law enforcement officer defendants are entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether qualified immunity applies should be decided at the earliest point in the legal proceedings. *Id.* at 232. The test for qualified immunity is well established. The immunity "shields federal and state officials from money damages unless a plaintiff pleads

facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quoting *Ascroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Second Amended Complaint avers that "defendant Wilson looked into [Mr. Garcia's] car and could see that [he] had a handgun between the driver's seat and the center console. The officers then repositioned themselves around the vehicle." (Doc. 31 ¶ 36.) The Second Amended Complaint says nothing more about the handgun, including whether Mr. Garcia exercised any control over it.

Defendants urge dismissal based on qualified immunity because, according to them, Mr. Garcia was armed with the handgun when he was shot. They heavily rely on the officers' body camera recordings of the incident, arguing that "there is no factually similar case finding a constitutional violation when an officer shoots an <u>armed</u> subject, who refuses multiple police warnings to drop the gun, tells officers to 'shoot me, mother----,' and constitutes an immediate threat by his continued handling of the firearm." (Doc. 33 at 13.)

Defendants correctly assert that, at the motion to dismiss stage, the Court may consider police body camera recordings that are incorporated by reference in the complaint. *J.K.J. v. City of San Diego*, 42 F.4th 990, 998 (9th Cir. 2021). The Second Amended Complaint does, indeed, reference the body camera recordings. (Doc. 31 ¶¶ 19, 23, 30, 38, 39.) But, after reviewing both officers' body camera recordings that were submitted as exhibits to the Motion to Dismiss, the Court is unable to discern at any point whether Mr. Garcia had control of the handgun. One officer's bodycam recording shows the police handling a gun that apparently was removed from the vehicle. (Doc. 33, Exhibit 1 at 38:40.) This part of the recording shows events after the shooting and, again, the Court cannot conclude, at least at this early stage, whether Mr. Garcia was at any point holding it. The Court acknowledges that the officers may have first-hand knowledge of Mr. Garcia holding the handgun. But these observations, if true, are not captured on the body camera recordings.

Based on this record, the Court cannot reach the conclusion that Defendants recommend. Doing so would require an assumption of fact that the Court is not prepared to make. This is particularly so given that the Second Amended Complaint alleges only that the handgun was "between the driver's seat and the center console." Reasonable inferences must be drawn in Plaintiff's favor, one being that the handgun was present, but that Mr. Garcia was not holding it. For these reasons, the Motion to Dismiss based on qualified immunity will be denied without prejudice.

3. Next, Defendants argue that the Fourteenth Amendment familial association claim should be dismissed because the Second Amended Complaint fails to state a claim consistent with the purpose-to-harm standard. Plaintiff disagrees, asserting that their claim, as pleaded, is cognizable under the deliberate indifference standard. The Court cannot determine which standard applies to the Defendants' conduct with this limited record. *See Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) (resolving similar issue in favor of the purpose-to-harm standard at the summary judgment phase). The cases in which Defendants rely on resolve this issue at the summary judgment stage. For the purposes of the instant Motion, therefore, the Court finds that Plaintiff has adequately pleaded their familial association claim. Defendants may reassert the application of the purpose-to-harm standard at a later stage.

**IV.**

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 33) is **denied**.

Dated this 14th day of September, 2022.

Michael T. Liburdi
United States District Judge